UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
JANELLE ROSS,

                         Plaintiff,

             - against -

CITY OF NEW YORK, ERIC LORIA,
individually, and JEFFREY MARESCA,
individually,

                     Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-3505 (PKC) (SMG)

PAMELA K. CHEN, United States District Judge:

       Plaintiff Janelle Ross brings this action against Defendants Eric Loria and Jeffrey Maresca,

both in their individual capacity[1] (collectively, the "Individual Defendants"), as well as the City of

New York, advancing (1) claims under 42 U.S.C. § 1983 for false arrest/unlawful imprisonment,

violation of the right to a fair trial, failure to intervene, and supervisory liability; and (2) state law

and state constitutional claims for false arrest and battery.  Currently pending before the Court is

Defendants' motion for summary judgment.  For the reasons stated below, Defendants' motion is

granted in part and denied in part.

---

[1] While state officials or employees generally cannot be sued for monetary damages in their
official capacity for conduct engaged in as part of their duties, they can be sued in their individual
capacity for such damages.  *State Emp. Bargaining Agent Coal. v. Rowland*, 718 F.3d 126, 137
(2d Cir. 2013) ("[C]laims for monetary damages against the defendants in their individual
capacities are not barred by the Eleventh Amendment.")

# BACKGROUND

## I. Relevant Facts[2]

On March 12, 2016, at approximately 5:30 p.m., Plaintiff was working at a Burger King restaurant located in Staten Island, New York. (Defendants' 56.1 Statement ("Defs.' 56.1"), Dkt. 37, ¶ 1.) Plaintiff's brother, Harrison Ross, arrived at the restaurant to give Plaintiff a debit card. (Plaintiff's 56.1 Counterstatement ("Pl.'s 56.1"), Dkt. 43, at 2 ¶ 3.) Defendant New York City Police Department ("NYPD") Officer Eric Loria,[3] wearing his uniform, walked in and asked to speak to Harrison Ross. (*Id.* at 2 ¶ 5; Defs.' 56.1, Dkt. 37, ¶ 3.) Mr. Ross refused, left the restaurant, and went into his car, which was parked outside. (Pl.'s 56.1, Dkt. 43, at 3 ¶ 8.) Officer Loria followed Mr. Ross to his car. (*Id.* at 3 ¶ 9.) From inside the restaurant, Plaintiff saw Mr. Ross inside a car that was parked in a handicap parking spot. (Defs.' 56.1, Dkt. 37, ¶ 2.) Officer Loria asked to see Mr. Ross's driver's license and registration. (*Id.* ¶ 4.) Upon seeing Officer Loria open Mr. Ross's car door and attempt to remove Mr. Ross from the vehicle, Plaintiff ran

---

[2] Unless otherwise noted, a standalone citation to Defendants' 56.1 Statement or Plaintiff's 56.1 Counterstatement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to Defendants' 56.1 Statement or Plaintiff's 56.1 Counterstatement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document. The Court has deemed facts averred in a party's 56.1 statement to which the opposing party cites no admissible evidence in rebuttal as undisputed. *See Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 12, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything." (emphasis in original)). Additionally, to the extent a party's 56.1 statement "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts," the Court has disregarded the statement. *Risco v. McHugh*, 868 F. Supp. 2d 75, 87 n.2 (S.D.N.Y. 2012).

[3] Officer Loria was Plaintiff's neighbor, and prior to the March 12, 2016 incident, Mr. Ross had had four "interactions" with Officer Loria. (Pl.'s 56.1, Dkt. 43, at 2 ¶¶ 4, 6.)

outside "to see what was going on." (*Id.* ¶¶ 3, 5.) Plaintiff "grabbed and tugged [Officer Loria's] shirt" by the collar. (*Id.* ¶ 6.)[4] Officer Loria told Plaintiff to get off of him. (Defs.' 56.1, Dkt. 37, ¶ 7.) Plaintiff held on to Officer Loria's shirt for a few seconds.[5] (Tr. of Pl.'s CCRB Interview, Dkt. 36-2, at 22:14−16.)

Mr. Ross was arrested by Officer Loria. (Pl.'s 56.1, Dkt. 43, at 4 ¶ 17.) After Defendant NYPD Sergeant Jeffrey Maresca, Officer Loria's supervisor, arrived, Officer Loria informed Sergeant Maresca that Plaintiff had "jumped on" Officer Loria's back. (*Id.* at 4 ¶ 18.) Sergeant Maresca then directed another officer to arrest Plaintiff. (*Id.* at 4 ¶ 22.) Afterwards, Sergeant Maresca watched the surveillance video[6] at the restaurant that partially showed the incident. (*Id.* at 4 ¶ 23.)

Mr. Ross was charged with, *inter alia*, Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree, Resisting Arrest, and Obstructing Governmental Administration

---

[4] (*See also* Transcript ("Tr.") of Pl.'s Civilian Complaint Review Board ("CCRB") Interview, Dkt. 36-2, at 2:20−22 ("I didn't like tug, I just like grabbed his shirt, it wasn't really significant . . . ."); *id.* at 11:14−15 ("Inv[estigator] Ellman: Okay. And at what point in that did you tug on his shirt? Ms. Ross: Like, it was like when I first got over there."); Tr. of Pl.'s N.Y. Gen. Mun. Law § 50-h Hearing, Dkt. 36-1, at 19:5−13 ("A. I placed my hand on [Officer Loria's] shirt. Q. Where on his shirt did you— A. His collar. Q. On the back? A. Uh-huh. Yes."); Tr. of Pl.'s CCRB Telephone Interview, Dkt. 36-4, at 2:11−13 ("So I run out, and I grabbed his shirt, like not like grab like, choking, just like, just to get him off, just like, tugging just to get him off.").)

[5] There is a dispute as to how long Plaintiff held on to Officer Loria or his shirt. Plaintiff claims that it was three seconds whereas Defendants claim that it was at least 35 seconds. (*See* Pl.'s 56.1, Dkt. 43, ¶ 15; Defendants' 56.1 Response, Dkt. 40, ¶ 15.) The surveillance video supplied by Plaintiff as her Exhibit 3 to her summary judgment opposition does not provide a clear answer as to the extent and length of Plaintiff's contact with Officer Loria.

[6] The surveillance video viewed by Sergeant Maresca is the same as the one submitted by Plaintiff as Exhibit 3 to her summary judgment opposition, except that Plaintiff's Exhibit 3 is a recording of the surveillance video being played on a computer and being viewed, it seems, by a female, based on a voice overheard on Exhibit 3 commenting on, and a finger pointing to, the surveillance video as it was being played. (*See* Video, Dkt. 44-3.)

("OGA") in the Second Degree. (Defs.' 56.1, Dkt. 37, ¶ 9.) He pled guilty to Driving Without a

License. (*Id.*) Plaintiff was arrested at the scene for OGA in the Second Degree[7] and, at her

arraignment two days later, on March 14, 2016, accepted an Adjournment in Contemplation of

Dismissal ("ACD"). (*Id.* ¶¶ 10−11; Pl.'s 56.1, Dkt. 43, at 5 ¶ 28.) Plaintiff did not make another

court appearance in connection with the arrest. (*Id.* ¶ 12.)

## II. Procedural History

Plaintiff filed her initial complaint in this action on June 10, 2017.[8] (*See* Complaint,

Dkt. 1.) Plaintiff twice amended her complaint, first on January 12, 2018 and again on August 7,

2018. (*See* Amended Complaint, Dkt. 12; Second Amended Complaint ("SAC"), Dkt. 29.)

Defendants' motion for summary judgment was fully briefed on February 19, 2019. (*See* Notice

of Motion for Summary Judgment, Dkt. 35.)

## STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties, taken together,

"show[] that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251−52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

---

[7] It is unclear how long Plaintiff was detained from the record. Plaintiff claims that she was "detained from approximately 5:30 p.m. on March 12, 2016 through her release from custody on March 14, 2016, when [P]laintiff was finally arraigned and accepted an ACD." (Pl.'s Brief, Dkt. 42, at 8), but the cited evidence does not substantiate this factual averment. The Court therefore does not deem this fact admitted. *See Gallimore-Wright v. Long Island R. Co.*, 354 F. Supp. 2d 478, 488 (S.D.N.Y. 2005) ("Judges are not like pigs, hunting for truffles buried in the record" (internal quotation marks and citation omitted)).

[8] Harrison Ross was originally a plaintiff in this action. However, he was dismissed from this case upon a Stipulation of Dismissal on March 12, 2018. (*See* 3/12/18 Docket Order.)

prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (internal quotation marks omitted) (alteration in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (internal quotation marks omitted).

In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247−48.

## DISCUSSION

In her SAC, Plaintiff asserts the following claims: (1) false arrest against both the Individual Defendants (SAC, Dkt. 29, ¶¶ 41–44); (2) denial of the right to fair trial against

Defendant Loria (*id.* ¶¶ 45–49); (3) failure to intervene against Defendant Maresca (*id.* ¶¶ 50–54); (4) supervisory liability against Defendant Maresca (*id.* ¶¶ 55–57); (5) false arrest under New York law against all Defendants (*id.* ¶¶ 64–70); (6) battery under New York law against all Defendants (*id.* ¶¶ 71–75); and (7) violations of the New York State Constitution against Defendant City of New York (*id.* ¶¶ 76–78). In their motion for summary judgment, Defendants ask this Court to dismiss all of Plaintiff's claims. (*See generally* Defendants' Brief, Dkt. 38.) The Court addresses each claim in turn.

## I. False Arrest Claims Against the Individual Defendants

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *see also Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law."). To prevail on a claim of false arrest or unlawful imprisonment, a plaintiff must prove that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (internal quotation marks and citation omitted). "'[T]he existence of probable cause' for an arrest 'is an absolute defense to a false arrest claim.'" *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)). As the Second Circuit has explained:

> Although the existence of probable cause must be determined with reference to the facts of each case, in general "probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."

*Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (brackets omitted) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)).

To prevail on summary judgment, however, Defendants need not prove that there was *actual* probable cause. A law enforcement officer is entitled to qualified immunity "if 'arguable probable cause' existed—that is, if 'a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well[-]established law.'" *Antic v. City of New York*, 273 F. Supp. 3d 445, 452 (S.D.N.Y. 2017) (quoting *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001)), *reconsideration denied*, No. 16-CV-2425 (JMF), 2017 WL 3491967 (S.D.N.Y. Aug. 14, 2017), *and aff'd*, 740 F. App'x 203 (2d Cir. 2018). "Specifically, the doctrine of qualified immunity provides a complete defense where 'either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Antic*, 273 F. Supp. 3d at 452 (citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). Summary judgment is inappropriate when "on the undisputed facts the officer would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depends on material issues of fact." *Jenkins*, 478 F.3d at 88.

### A.     False Arrest Claim Against Defendant Loria

The Court concludes that, at a minimum, Defendant Loria had arguable probable cause to arrest Plaintiff for OGA.[9]  Under New York law, a person is guilty of OGA "when [she]

---

[9] Although Officer Loria did not make the decision to arrest Plaintiff—Sergeant Maresca did—the Court does not dismiss the false arrest claim against Officer Loria on that basis, since he was the one who provided the information that prompted Sergeant Maresca, in large part, to order Plaintiff's arrest. Thus, Officer Loria was a direct participant in Plaintiff's arrest, even if he did not make that decision.

intentionally . . . prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference . . . ." N.Y. Penal Law § 195.05. "'Physical force or physical interference' includes 'inappropriate and disruptive conduct at the scene of the performance of an official function.'" *Husbands ex rel. Forde v. City of New York*, No. 05-CV-9252 (NRB), 2007 WL 2454106, at *13 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 335 F. App'x 124 (2d Cir. 2009) (quoting *People v. Dolan*, 576 N.Y.S.2d 901, 905 (N.Y. App. Div. 1991)). Courts have interpreted the statute broadly, holding that "merely approaching the police, or speaking during the course of a police action, or disregarding police instructions, will support a conviction." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 403 (E.D.N.Y. 2011). The facts in *Antic* are instructive: there, an officer was a few feet away from an ongoing arrest, when the plaintiff "tapped" the officer from behind to get his attention. *Antic*, 273 F. Supp. 3d 445, 453−54. The court there found that the officer's attention was diverted "from whatever he was doing in connection with his duties at the crime scene" and a reasonably competent officer could have acted as the officer did in arresting the plaintiff. *Id.* at 454.

Plaintiff's argument that there is a genuine dispute of a material fact because Plaintiff disputes Officer Loria's version of events—*i.e.*, that Plaintiff jumped on Officer Loria's back while the Officer was trying to arrest Plaintiff's brother—is without merit. Plaintiff need not agree with Officer Loria's account because the *undisputed* facts are enough to establish that a reasonable officer could have believed that probable cause existed. Here, Plaintiff admitted to NYPD investigators that she made contact with Officer Loria by "tugg[ing]" or "grabb[ing]" the Officer's shirt to "get him off of her brother." (Defs.' 56.1, Dkt. 37, ¶ 6; Tr. of Pl.'s CCRB Interview, Dkt. 36-2, at 2:20−22, 11:14−15; Tr. of Pl.'s N.Y. Gen. Mun. Law § 50-h Hearing, Dkt. 36-1, at 19:5−12; Tr. of Pl.'s CCRB Telephone Interview, Dkt. 36-4, at 2:11−13 ("So I run out, and I

grabbed his shirt, like not like grab like, choking, just like, just to get him off, just like, tugging just to get him off.").) Whether Plaintiff grabbed Officer Loria's shirt or jumped on him is immaterial given that Plaintiff's acknowledged physical contact with Officer Loria establishes at least arguable probable cause.

In the only case Plaintiff relies on, the plaintiff only admitted to unintentional contact, and the court—obligated at the summary judgment stage to construe the facts in the light most favorable to the plaintiff—found that "a reasonable jury could find that no 'person of reasonable caution' would jump to the conclusion that [the plaintiff] intended to impede [the officer]." *Barksdale v. Colavita*, 506 F. App'x 82, 85 (2d Cir. 2012) (summary order); *see id.* (finding summary judgment inappropriate because the plaintiff disputed that he intended to obstruct the officer and the dispute was "material to a determination of reasonableness" under arguable probable cause). In contrast, Plaintiff here admitted that she *intentionally* made contact with Officer Loria for the purpose of interfering with the Officer with respect to her brother's arrest. Based on Plaintiff's admission, no reasonable jury could find that a reasonable officer would not conclude that Plaintiff "intended to impede" Officer Loria.

Because there is no dispute that Officer Loria was attempting to arrest Mr. Ross and Plaintiff's actions diverted Officer Loria's attention (*see* Defs.' 56.1, Dkt. 37, ¶ 7 ("Officer Loria asked plaintiff to get off of him.")), a reasonable officer could have believed that such action constituted sufficient interference to establish that Plaintiff had committed OGA. Therefore, Defendant Loria had arguable probable cause to arrest Plaintiff for OGA, and is entitled to qualified immunity with respect to Plaintiff's false arrest claim.

## B.      False Arrest Claim Against Defendant Maresca

Defendant Sergeant Maresca is entitled to the same qualified immunity as Defendant Loria. Sergeant Maresca was not present during Officer Loria's arrest of Mr. Ross and did not see any of the interaction between Plaintiff and Officer Loria.  However, when Sergeant Maresca arrived on the scene, Officer Loria reported to Sergeant Maresca that Plaintiff had jumped on Officer Loria's back while he was attempting to arrest Plaintiff's brother, and Sergeant Maresca also reviewed the surveillance video afterward, which partially corroborated Officer Loria's report.[10] (*See* Pl.'s 56.1, Dkt. 43, ¶ 18 (stating that Officer Loria told Sergeant Maresca that Plaintiff had jumped on his back); *id.* ¶ 23 (stating that Sergeant Maresca viewed the video surveillance of Plaintiff's interaction with Officer Loria); Video, Dkt. 44-3.)

A police officer is entitled to rely on a fellow officer's reporting of events.  *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("When making a probable cause determination, police officers are entitled to rely on the allegations of fellow police officers.").  Here, Sergeant Maresca was entitled to rely on Officer Loria's report that Plaintiff had jumped on Officer Loria's back in deciding whether to arrest her.  Based on Officer Loria's report and the surveillance video, which partially corroborated the Officer's account, Sergeant Maresca, at a minimum, had arguable probable cause to arrest Plaintiff for OGA.  *See Selinger v. City of New York*, No. 08-CV-2096 (RMB), 2010 WL 4616138, at *5 (S.D.N.Y. Nov. 5, 2010) (granting summary judgment on qualified immunity because the arresting officer "had the right to rely on the information given to him by [a fellow officer]"), *aff'd*, 453 F. App'x 93 (2d Cir. 2011); *see also Bennett v. Vidal*, 267 F. Supp. 3d 487, 495 (S.D.N.Y. 2017) (granting summary judgment when "officers of reasonable

---

[10] The video shows, *inter alia*, Plaintiff running out to her brother's car and being close enough to Officer Loria to have physical contact with the Officer for about 20 seconds, but the video does not show the extent of such contact.  (*See* Video, Dkt. 44-3, at 4:20−4:50.)

competence could disagree on whether the probable cause test was met" and finding that the officer's mistaken belief does not obviate arguable probable cause). Therefore, Sergeant Maresca is entitled to qualified immunity with respect to Plaintiff's arrest.

*       *       *

Accordingly, the Court grants summary judgment to the Individual Defendants on Plaintiff's false arrest claim.

## II.      Denial of a Fair Trial Claim Against Defendant Loria

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). To succeed on a § 1983 claim alleging a violation of the fair trial right, a plaintiff must prove that "an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Aguirre v. City of New York*, No. 15-CV-6043 (PKC), 2017 WL 4236552, at *10 (E.D.N.Y. Sept. 22, 2017) (brackets omitted) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).

Defendants argue that Plaintiff's fair trial claim against Officer Loria fails because (1) Plaintiff's prosecution was not terminated in her favor;[11] and (2) Officer Loria's alleged

---

[11] Defendants submitted a letter motion to supplement their motion for summary judgment, supplying an additional argument for dismissal of the fair trial claims based on the Supreme Court's recent decision in *McDonough v. Smith*, 139 S. Ct. 2149 (2019). (Defendants' Supplemental Letter ("Defs.' Supp. Letter"), Dkt. 46.) The Court granted the motion and also granted Plaintiff leave to respond. (*See* Sept. 21, 2019 Order; Plaintiff's Supplemental Letter ("Pl.'s Supp. Letter"), Dkt. 49.)

fabrication did not cause Plaintiff's deprivation of liberty.[12]  (Defs.' Br., Dkt. 38, at 12–13.)  The
Court addresses each argument in turn.

### A.  Plaintiff's ACD Does Not Bar Her Fair Trial Claim

Defendants argue that the recent Supreme Court decision in *McDonough v. Smith* requires
the Court to dismiss Plaintiff's fair trial claim, because she did not obtain a favorable termination
of her criminal case.  (*See generally* Defs.' Supp. Letter, Dkt. 46, at 2 (quoting *McDonough*, 139
S. Ct. 2156–57, 2159 (holding that the plaintiff "could not bring his fabricated evidence claim
under § 1983 prior to the favorable termination of his prosecution" and that the plaintiff had "a
complete and present cause of action for the loss of liberty only once the criminal proceedings
against him terminated in his favor")).)  The Court disagrees with Defendants' interpretation of
*McDonough*.

The Supreme Court in *McDonough* sought to address the time of accrual for fair trial claims
and held that the statute of limitations for a fair trial claim does not being to run until "the criminal

---

[12] Defendants waited until serving their reply brief to make the precise argument that
Plaintiff was not deprived of her liberty at all because Plaintiff only went to court once.
(Defendants' Reply Brief ("Defs.' Reply Br."), Dkt. 41, at 5.)  The Court "does not consider issues
raised in a reply brief for the first time because if a party raises a new argument in a reply brief the
opposing party may not have an adequate opportunity to respond to it."  *In re Various Grand Jury
Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017).  However, the Court notes that some
language in Defendant's Opening Brief could be interpreted as advancing a less fulsome version
of this argument.  (*See* Defendants' Opening Brief ("Defs.' Br."), Dkt. 38, at 13 ("[P]laintiff
accepted an ACD at her arraignment *and made no additional court appearances thereafter*."
(emphasis added)).)  To the extent the Court considers this argument, it is rejected on the merits.
In their reply, Defendants cite to *Randolph v. Metro. Transp. Auth.*, No. 17-CV-1433 (DLC), 2018
WL 2943744, at *7 (S.D.N.Y. June 12, 2018), to support their argument that a single court
appearance does not constitute a sufficient deprivation of liberty for a fair trial claim.  (Defs.'
Reply Br., Dkt. 41, at 5.)  But the plaintiff in *Randolph* was never detained, *see* 2018 WL 2943744,
at *7 (noting that the plaintiff "was not detained in a jail or precinct"), whereas, here, Plaintiff was
arrested (Defs.' 56.1, Dkt. 37, ¶ 10) and therefore deprived of her liberty.  *See Baksh v. City of
New York*, No. 15CV7065 (NGG) (ST), 2018 WL 1701940, at *10 (E.D.N.Y. Mar. 31, 2018)
("Plaintiff's initial detention, combined with his subsequent court appearances and community
service, clearly constitutes a deprivation of liberty supporting a fair-trial claim.").

proceeding has ended in the [plaintiff's] favor, or a resulting conviction has been invalidated within the meaning of *Heck*[ *v. Humphrey*, 512 U.S. 477, 486–87 (1994)]." *McDonough*, 139 S. Ct. at 2158. Relying heavily on *Heck*, the Supreme Court emphasized that its decision was driven by "concerns with parallel litigation and conflicting judgments," and focused on the fact that allowing the statute of limitations on a fair trial claim to start running before the criminal case was favorably terminated could result in a plaintiff bringing civil fair trial claims in the midst of his criminal proceedings. *Id.* at 2157. The Court reasoned that, absent a rule that started the statute of limitations running once a favorable termination is reached, criminal defendants who believed that evidence had been fabricated in their prosecutions would face the Hobson's choice of either pursuing a civil case while their criminal case was ongoing, or waiting to bring the civil action after their criminal matter is resolved with the risk that their fair trial claim will be time-barred. *Id.* at 2158. In holding that the statute of limitations does not begin to run until a plaintiff has obtained a favorable termination, the Supreme Court expressly declined to expand on the existing jurisprudence as to what constitutes a favorable termination for purposes of a fair trial claim:

> Because [the plaintiff's] acquittal was unquestionably a favorable termination, we have no occasion to address the broader range of ways a criminal prosecution (as opposed to a conviction) might end favorably to the accused. To the extent [the defendant] argues that the law in this area should take account of prosecutors' broad discretion over such matters as the terms on which pleas will be offered or whether charges will be dropped, those arguments more properly bear on the question whether a given resolution should be understood as favorable or not. Such considerations might call for a context-specific and more capacious understanding of what constitutes "favorable" termination for purposes of a § 1983 false-evidence claim, but that is not the question before us.

*Id.* at 2160 n.10 (citation omitted).

Defendants argue that in *McDonough*, the Supreme Court established that a favorable termination is an element of a fair trial claim. (Defendants' Supp. Letter, Dkt. 46, at 2 ("Specifically, in *McDonough*, the Supreme Court held, *inter alia*, that, in order to bring a federal

13

fair trial (*i.e.*, fabrication of evidence) claim like the one plaintiff asserts in this case, the plaintiff

must prove that the underlying criminal prosecution terminated in her favor.").)  In support of their

argument, Defendants rely on the Court's statements that a plaintiff "[cannot] bring his fabricated

evidence claim under § 1983 prior to [the] favorable termination of his prosecution" and a plaintiff

has "a complete and present cause of action for the loss of [his] liberty only once the criminal

proceedings against him terminated in his favor."  (*Id.* (citing *McDonough*, 139 S. Ct. at 2156−57,

2159).)  Defendants then state that "[i]t is well-settled that an ACD does not constitute a favorable

termination."  (*Id.*)

Plaintiff counters that the holding in *McDonough* was "expressly limited to determining

the accrual of the statute of limitations for a right to fair trial claim like *McDonough*'s, and not a

broader ruling on the substantive elements of all right to fair trial claims."  (Pl.'s Supp. Letter,

Dkt. 49, at 1.)  Plaintiff also argues that, "even if, *arguendo*, a favorable termination were now to

be considered a required element to a right to fair trial claim, neither the Supreme Court nor the

Second Circuit has ruled on what a favorable termination means in the context of a due process

right to fair trial claim."  (*Id.* at 1−2.)

Here, the Court assumes, without deciding,[13] that a favorable termination of Plaintiff's

_____

[13] Given the recency of *McDonough*, courts in this Circuit have not extensively explored this issue.  Although two courts in this Circuit have reached seemingly different results, *compare Goldring v. Donawa*, No. 16-CV-5651 (KAM) (LB), 2019 WL 4535507, at *4 (E.D.N.Y. Sept. 19, 2019) (holding that where the plaintiff had pleaded guilty to one of the charged crimes, he had "not received a favorable termination under Second Circuit case law and, therefore, cannot maintain a § 1983 action for an unfair trial"), *with Wellner v. City of New York*, No. 16-CV-7032 (JGK), 2019 WL 3729806, at *6−7 (S.D.N.Y. Aug. 8, 2019) (holding that the plaintiff could pursue a fair trial claim despite having pleaded guilty to one of the four charged misdemeanors), these decisions can be reconciled based on their different facts.  In *Goldring*, the plaintiff's fair trial claim was based on the facts underlying the charge to which he had pled guilty, *see* 2019 WL 4535507, at *4, whereas in *Wellner*, the plaintiff's claim was based on facts relating to charges on which he was never convicted because they were dropped after he pled guilty to a misdemeanor

14

underlying criminal prosecution is necessary to permit her to bring a fair trial claim, but finds that Plaintiff can establish that her prosecution was terminated in her favor.

Plaintiff's underlying criminal prosecution was resolved with an ACD. (Defs.' 56.1, Dkt. 37, ¶ 11.) Prior to *McDonough*, courts in the Second Circuit have repeatedly held that "an ACD does not preclude a fair trial claim." *Apostol v. City of New York*, No. 11-CV-3851 (RRM) (CLP), 2014 WL 1271201, at *5 (E.D.N.Y. Mar. 26, 2014), *aff'd*, 607 F. App'x 105 (2d Cir. 2015); *see id.* (collecting cases); *Bryant v. Serebrenik*, No. 15-CV-3762 (ARR) (CLP), 2016 WL 6426372, at *7 (E.D.N.Y. Oct. 28, 2016) (collecting cases). "The granting of an [ACD] shall not be deemed to be a conviction or an admission of guilt." *Smith v. Bank of Am. Corp.*, 865 F. Supp. 2d 298, 302 (E.D.N.Y. 2012) (quotation marks omitted) (citing N.Y. Crim. Proc. Law § 170.55(8)). While "[a] fair trial claim that would impugn the validity of a conviction must be dismissed," *Bailey v. City of New York*, 79 F. Supp. 3d 424, 445 (E.D.N.Y. 2015), when the criminal proceeding concluded with an ACD, a fair trial claim does not challenge the validity of a finding of guilt, *see Case v. City of New York*, 233 F. Supp. 3d 372, 383 (S.D.N.Y. 2017) ("Unlike a conviction, an ACD leaves open the question of guilt.").

While the Court recognizes that these pre-*McDonough* decisions were based, in part, on the principle that favorable termination is not an element of a fair trial claim—a debatable premise post-*McDonough*—it finds that because fair trial jurisprudence, starting with *Heck* and continuing through *McDonough*, is primarily concerned with the potential for invalidating criminal

---

that was unrelated to the other charges, *see* 2019 WL 3729806, at *3. Based on these decisions, the Court concludes that while *McDonough* may have established a favorable termination requirement for a fair trial claim, the definition of favorable termination, as discussed *infra*, does not preclude a fair trial claim where the allegedly fabricated evidence relates solely to a charge that was dropped in exchange for a plaintiff's guilty plea to another charge, because such a fair trial claim does not impugn the validity of the plaintiff's conviction.

convictions, the favorable termination requirement for fair trial claims (assuming there is one) is necessarily different and more expansive than the one for malicious prosecution claims.[14]

Thus, although this Court, like many, has found in the context of malicious prosecution claims that "an ACD is not a favorable termination," *Brooks v. Panas*, No. 14-CV-4835 (PKC), 2016 WL 614684, at *3 (E.D.N.Y. Feb. 16, 2016),[15] it does not find that this ruling applies to a fair trial claim. Nor does the Court find that the Second Circuit's recent clarification of the favorable termination standard in *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018), applies to Plaintiff's fair trial claim. *See Blount v. City of New York*, No. 15-CV-5599 (PKC) (JO), 2019 WL 1050994, at *2 (E.D.N.Y. Mar. 5, 2019) (applying *Lanning* to malicious prosecution claim). Rather, because the *Heck* bar only considers "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," *Heck*, 512 U.S. at 487,[16] the Court finds, consistent the well-established rule in this Circuit, that an ACD does not preclude

---

[14] A plaintiff asserting a malicious prosecution claim "invokes the protection of the Fourth Amendment," whereas "a claim that a government official denied [the plaintiff] his right to a fair trial finds its roots in the Sixth Amendment, as well as the due process clauses of the Fifth and Fourteenth Amendments." *Morse v. Spitzer*, No. 07-CV-4793 (CBA) (RML), 2012 WL 3202963, at *2–3 (E.D.N.Y. Aug. 3, 2012). *But see Goldring*, 2019 WL 4535507, at *3−4 (applying same analysis of favorable termination for malicious prosecution and fair trial claims).

[15] The Court notes that, in their reply, Defendants cited this Court's *Brooks* decision for the proposition that "[a]n ACD is not a favorable termination." (Defs.' Supp. Letter, Dkt. 46, at 2.) However, the Court finds this citation misleading to the extent that it does not acknowledge that the ruling was made in the context of a malicious prosecution claim.

[16] Interpreting *Heck*, the Second Circuit noted that *Heck* "does not automatically bar a § 1983 claim" and only bars challenges, when there is "a conviction that could not be reconciled with the claims of his civil action." *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014). Therefore, the question is "whether a judgment in favor of the plaintiff [in a civil fair trial case] would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487; *see Poventud*, 750 F.3d at 132 ("Unlike malicious prosecutions, many violations of constitutional rights, even during the criminal process, may be remedied without impugning the validity of a conviction.").

Plaintiff's fair trial claim.

**B.** **The Alleged Fabrication Could Have Caused the Deprivation of Liberty**

Defendants argue that because of independent probable cause, any alleged fabrication did not cause the deprivation of Plaintiff's liberty. (Defs.' Br., Dkt. 38, at 12–13.) The Court disagrees.

Although "[t]he existence of probable cause to arrest and prosecute is not a complete defense to a fair trial claim," *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 392 (E.D.N.Y. 2013), "where independent probable cause exists for the prosecution, plaintiff must show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself," *id.* at 394. However, inherent to the exception of independent probable cause is that the probable cause must be independent from the alleged fabrication and that the independent probable cause caused the deprivation of liberty. In *Hoyos*, the plaintiff was arrested and charged for operating a motor vehicle while under the influence of alcohol or drugs. 999 F. Supp. 2d at 383. The plaintiff disputed that "his breath and car smelled of alcohol, his speech was slurred, . . . he was unsteady on his feet when he exited his vehicle, and he admitted to having had a few drinks," but did not dispute that "[his] erratic driving, his state of slumber when first approached by the investigating officers, his grogginess, his bloodshot eyes, and his refusal to take a breathalyzer exam at the precinct." *Id.* at 393–94. The court found that the undisputed facts were independent of the alleged fabrication by the defendant-officers, and provided ample probable cause for the plaintiff's prosecution. Likewise, in *Polanco v. City of New York*, No. 14-CV-7986 (NRB), 2018 WL 1804702 (S.D.N.Y. Mar. 28, 2018), the plaintiff alleged that the defendants lied about her jumping on an officer's back and elbowing an officer in the face, but there was also independent evidence that the plaintiff refused to obey orders from officers to "get back" and interfered with the arrest

of another, thus supplying probable cause for the plaintiff's arrest for OGA.  *Id.* at *5, *11.

Here, by Defendants' own admission, the allegation that Plaintiff jumped on Officer Loria's back was the entire basis for the arrest and the subsequent proceeding.  (*See* Loria's Deposition, Dkt. 44-4, at 193:7−11 ("Q. And when you met with that prosecutor, you reiterated those allegations to the prosecutor that she jumped on your back; correct?  A. I believe so, sir, yes."); Maresca's Deposition, Dkt. 44-5, at 53:24−54:2 ("He said that as he was trying to place Mr. Ross under arrest, he said his sister jumped on his back."); Plaintiff's Criminal Court File, Dkt. 44-7, at ECF[17] 3 ("perp Female . . . did jump on a/o's ["arresting officer"] back preventing a/o from arresting male perp")).)  The alleged fabrication is not separate or independent evidence establishing probable cause for Plaintiff's arrest.  Rather, the alleged fabrication is the *only* evidence supporting Plaintiff's OGA prosecution.  That Plaintiff disputes Officer Loria's account does not make it "separate or independent" evidence.  While it is true that probable cause exists for OGA if one "merely approach[es] the police," *Rasmussen*, 766 F. Supp. 2d at 403, or "tapped" the officer, *Antic*, 273 F. Supp. 3d at 450, 453−54, there is no indication that Defendants or the prosecution relied on this fact alone, or on Plaintiff's admission that she pulled Officer Loria's collar, in deciding to prosecute Plaintiff.

Defendants also argue that Plaintiff's action, although allegedly misinterpreted by Officer Loria, constituted probable cause to arrest and prosecute Plaintiff, and therefore the fair trial claim should be dismissed.  However, the existence of probable cause to arrest and prosecute a plaintiff is not a defense to a fair trial claim.  *See Morse*, 2012 WL 3202963, at *5 ("[P]robable cause to arrest (or prosecute) is not a defense to [a fair trial claim].").

---

[17] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Additionally, there is a genuine issue of material fact as to whether the allegedly fabricated evidence caused the prosecution to pursue charges against Plaintiff. "In a situation in which an arrest or prosecution were supported by probable cause, a plaintiff can still prevail on a fair trial claim if fabricated evidence causes some 'further deprivation.'" *Rowell v. City of New York*, No. 16-CV-6598 (AJN), 2019 WL 280469, at *2 (S.D.N.Y. Jan. 22, 2019) (citing *Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017)). Further deprivations included "the setting of bail, . . . the prosecutor's decision to pursue charges rather than to dismiss the complaint without further action," *Garnett*, 838 F.3d at 277, "the number of court appearances a plaintiff made post-arraignment, [and] constraints such as bail requirements, a period of incarceration[,] or travel restrictions," *Hanson v. New York City*, No. 15-CV-1447 (MKB), 2018 WL 1513632, at *17 (E.D.N.Y. Mar. 27, 2018). These decisions "may depend on the prosecutor's and magistrate's assessments of the strength of the case, which in turn may be critically influenced by fabricated evidence. Thus, a further deprivation of liberty can result from the fabrication of evidence even if the initial arrest is lawful." *Garnett*, 838 F.3d at 277.

*Rowell* is analogous here. In initiating prosecution against the plaintiff, the defendants in *Rowell* had relied solely on "allegations that drugs and plastic baggies were recovered from [the p]laintiff's apartment." *Rowell v. City of New York*, No. 16-CV-6598 (AJN), 2018 WL 4682219, at *5 (S.D.N.Y. Sept. 28, 2018), *reconsideration denied*, No. 16-CV-6598 (AJN), 2019 WL 280469 (S.D.N.Y. Jan. 22, 2019). Despite finding that there was probable cause to arrest the plaintiff based on information that had been provided by a confidential informant, the court denied the defendants summary judgment as to the plaintiff's fair trial claim, because there was "a genuine issue of fact as to whether the allegedly fabricated evidence in this case[, *i.e.*, the drugs and plastic baggies,] caused the prosecution to pursue charges against [the p]laintiff." *Rowell*, 2019 WL

280469, at *2.

Here, the materiality of the factual dispute between the parties is bolstered by Officer Loria's statement that "I wouldn't arrest that person" if that person had tapped on his shoulder, wasn't impeding, and was just trying to find out what was going on. (Loria's Deposition, Dkt. 44-4, at 160:17−22.) A reasonable jury could infer from this statement that Plaintiff could have been released from custody sooner or could have been released without agreeing to an ACD, had Officer Loria not claimed or sworn that Plaintiff jumped on his back. *Cf. Hanson*, 2018 WL 1513632, at *18 ("At most, this allegation formed the basis for only one of the three counts of disorderly conduct contained in the Criminal Complaint. There is nothing to suggest that [the p]laintiff, who was released on recognizance after arraignment, would have been released from custody sooner if the Criminal Complaint had contained one less violation."). Therefore, the jury could find that the decision to hold Plaintiff until her arraignment two days later was influenced by Officer Loria's allegations. *See Loftin v. City of New York*, No. 15-CV-5656 (MKB), 2017 WL 3614437, at *9 (E.D.N.Y. Aug. 21, 2017) ("[B]ecause the information provided by the officers was the basis for the charges against [the p]laintiff, the officers' statements influenced the decision of the District Attorney's Office to charge [the p]laintiff in the Criminal Complaint.")

\*　　　\*　　　\*

Accordingly, Defendants' motion for summary judgment as to Plaintiff's fair trial claim is denied.

## III.　　Failure to Intervene Claim Against Defendant Maresca

"It is widely recognized that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014)

(quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

> An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official.

*Anderson*, 17 F.3d at 557 (citations omitted). To establish a claim for failure to intervene, a plaintiff must show (1) the officer's failure "permitted fellow officers to violate [a plaintiff's] clearly established statutory or constitutional rights," and (2) it was "objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." *Ricciuti*, 124 F.3d at 129 (citation and internal quotation marks omitted). Additionally, Plaintiff must show that the officer had "a realistic opportunity to intervene to prevent the harm from occurring" but failed to do so. *Cerbelli v. City of New York*, No. 99-CV-6846, 2008 WL 4449634, at *11 (E.D.N.Y. Oct. 1, 2008) (citation and internal quotation marks omitted).

Plaintiff acknowledges that "[t]o the extent a jury were to find that [the Individual Defendants] were directly involved in violating [P]laintiff's constitutional right to be free from false arrest, [P]laintiff would agree that no failure to intervene claim would exist as to either [D]efendant." (Pl.'s Br., Dkt. 43, at 9.) However, Plaintiff argues that she should be allowed to present an alternative theory at trial, *i.e.*, that Maresca "fail[ed] to intervene in the continued arrest of [P]laintiff insofar as Maresca admits that he viewed the video" showing Plaintiff's interaction with Officer Loria. (*Id.* at 10.)

The Court rejects Plaintiff's argument because no reasonable jury could conclude that Sergeant Maresca was not directly involved in Plaintiff's arrest. As Plaintiff acknowledges, Plaintiff was not arrested until after Sergeant Maresca arrived. (Pl.'s 56.1, Dkt. 43, at 4 ¶ 17.) Once Sergeant Maresca arrived and spoke to Officer Loria, Sergeant Maresca "directed a subordinate officer to handcuff [P]laintiff." (*Id.* at 4 ¶ 22.) Sergeant Maresca, therefore, was the

one who made the decision to arrest Plaintiff and cannot be held liable under a failure to intervene theory. *See Jackson v. City of New York*, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013) (holding that since "both [defendants] may be held liable under a theory of direct participation, [] neither would be held liable for failure to intervene"); *cf. Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (noting that "[l]iability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality" (emphasis added)).

Moreover, even assuming *arguendo*, that there is a material dispute as to whether Sergeant Maresca was directly involved in the arrest, Plaintiff has still failed to establish a failure to intervene claim. "Failure to intervene claims are contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Usavage v. Port Auth. of N.Y. & N. J.*, 932 F. Supp. 2d 575, 599 (S.D.N.Y. 2013). In general, "if the Court determines that the officer's conduct did not violate a constitutional right[,] the analysis ends." *Williams v. City of New York*, No. 14-CV-7158 (JPO), 2016 WL 3194369, at \*6 (S.D.N.Y. June 7, 2016) (internal quotation marks, alterations, and citations omitted). Here, the Court has found, *supra*, that Officer Loria had, at minimum, arguable probable cause to arrest Plaintiff and therefore is entitled to qualified immunity. "Having determined that there was at least arguable probable cause to arrest [the plaintiff] . . . it cannot be said that Defendant [Maresca's] failure to intervene was objectively unreasonable." *Id.* at \*7; *see also Levy v. City of New York*, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013) ("The Court has already concluded that the predicate claim for false arrest cannot survive due to qualified immunity. Therefore, the claim for failure to intervene based on the false arrest claim likewise fails.").[18]

---

[18] The Court notes that "this principle generally has been applied to preclude failure to intervene liability when *no* constitutional violation was found, as opposed to when a constitutional

Accordingly, Defendants' motion for summary judgment as to Plaintiff's failure to intervene claim against Sergeant Maresca is granted.

## IV. Supervisory Liability Claim Against Defendant Maresca

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation and quotation marks omitted). In other words, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Supervisory liability can be shown in one or more of the following ways:

> (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Id.* at 145 (citation omitted).

"The analysis of the supervisory liability claims in this case turns on the underlying constitutional claims against the individual officer defendants." *Carpenter v. City of New York*,

---

violation is found, but qualified immunity is granted to those who personally committed the violation." *Jackson v. Tellado*, 236 F. Supp. 3d 636, 657 n.17 (E.D.N.Y. 2017). "As a result, an arresting officer could violate a suspect's rights (*i.e.* arrest him without probable cause) while objectively having arguable probable cause, while a non-intervening officer with additional information available to him could or should have known there was no arguable probable cause." *Id.* at 657. The Court does not find this to be the case here, given that both Officer Loria and Sergeant Maresca were acting on the same information. (*See* Pl.'s 56.1, Dkt. 43, at 4 ¶ 18 (stating that Officer Loria told Sergeant Maresca that Plaintiff had jumped on his back); *id.* at 4 ¶ 23 (stating that Sergeant Maresca viewed the video surveillance of Plaintiff's interaction with Officer Loria)); *see also Jackson*, 236 F. Supp. 3d at 657–58 (resolving a seemingly inconsistent trial verdict by noting that a jury found that the arresting officers believed, though mistakenly, that the plaintiff had committed a crime by assaulting someone and therefore were not liable for false arrest, but that the jury had also found that at least some of the non-intervening defendants did not believe that the plaintiff had committed a crime and therefore could not have believed that the arrest was lawful, yet failed to intervene anyway).

984 F. Supp. 2d 255, 269 (S.D.N.Y. 2013). Because summary judgment is granted to the Individual Defendants on the false arrest claims, it is also granted to Sergeant Maresca on the supervisory liability claim as to the false arrest. As to the fair trial claim, however, Plaintiff has raised a genuine issue of material fact. Therefore, the question is whether Plaintiff has also raised a genuine issue of material fact as to the existence of supervisory liability.

Plaintiff has not set forth evidence demonstrating a genuine dispute of material fact that Defendant Maresca was personally involved in the alleged evidence fabrication by Defendant Loria. Although Sergeant Maresca ordered the arrest of Plaintiff, he was entitled to rely on Officer Loria's representation that Plaintiff jumped on his back. *See Panetta*, 460 F.3d at 395 ("When making a probable cause determination, police officers are entitled to rely on the allegations of fellow police officers."). Plaintiff states, in substance, that Sergeant Maresca should have become privy to Officer Loria's alleged fabrication upon viewing the surveillance video from the restaurant. (Pl.'s 56.1, Dkt. 43, at 4 ¶¶ 24−25.) However, the video neither proves nor disproves Officer Loria's allegations, because Plaintiff's contact with Officer Loria was almost entirely obscured by Mr. Ross's car in the video. (*See* Video, Dkt. 44-3.) Based on the evidence in the record, no reasonable jury could conclude that Sergeant Maresca should have known or discovered, upon reviewing the surveillance video, that Officer Loria's report that Plaintiff had jumped on his back was false or fabricated. Plaintiff does not set forth any other evidence showing that Sergeant Maresca was aware of the alleged fabrication or Officer Loria's transmission of this allegedly false information to the prosecutor, or that Sergeant Maresca himself participated in the transmission of the allegedly false statement. Neither does Plaintiff point to any evidence showing that Sergeant Maresca was grossly negligent in his supervision or training of Officer Loria.

Therefore, Defendants' motion for summary judgment as to Plaintiff's supervisory liability

claim is granted. *See Grega v. Pettengill*, 123 F. Supp. 3d 517, 554 (D. Vt. 2015) (dismissing a supervisory liability claim because Plaintiff did not allege that the defendant "knew of the . . . manipulation of the evidence").

## V. State False Arrest Claims Against the Individual Defendants

The qualified immunity doctrine applies to state false arrest claims. *See, e.g.*, *Kass v. City of New York*, 864 F.3d 200, 213 (2d Cir. 2017) (dismissing the state law false arrest claim because qualified immunity existed for the federal law false arrest claim), *cert. denied sub nom. Kass v. City of New York, N.Y.*, 138 S. Ct. 487 (2017); *Mesa v. City of New York*, No. 09-CV-10464 (JPO), 2013 WL 31002, at *12 (S.D.N.Y. Jan. 3, 2013) (collecting cases). Therefore, for the reasons stated *supra*, Plaintiff's state false arrest claims are dismissed. *See Jenkins*, 478 F.3d at 87 ("If the detective defendants were entitled to quality immunity under federal law, summary judgment would be similarly appropriate on [the plaintiff's] state law false arrest claim.").

## VI. State Battery Claims Against the Individual Defendants

"[W]here there has been a lawful arrest, intentional contact with the arrested person does not constitute assault and battery, provided such force is reasonable." *Cunningham v. United States*, 472 F. Supp. 2d 366, 381 (E.D.N.Y. 2007), *opinion corrected* (Feb. 2, 2007). "The existence of arguable probable cause entitles [the defendant] to qualified immunity on [the plaintiff's] claims for . . . assault and battery . . . ." *Pinto v. City of New York*, 728 F. App'x 26, 31 (2d Cir. 2018) (summary order). Plaintiff does not allege excessive force or any physical contact beyond what was used to effectuate her arrest. Thus, because Defendants are entitled to qualified immunity with regard to Plaintiff's false arrest claims, as discussed *supra*, and because she does not allege excessive force in connection with her arrest, her battery claims are dismissed. *Leibovitz v. City of New York*, No. 14-CV-7106 (KAM) (LB), 2018 WL 1157872, at *23 n.21

(E.D.N.Y. Mar. 2, 2018) ("[T]he individual defendants are entitled to qualified immunity, and [the] plaintiff's assault and battery claim must be dismissed as against them on qualified immunity grounds.").

## VII.    State Constitutional Claim Against Defendant City of New York

Plaintiff asserts violations of the New York State Constitution against Defendant City of New York, specifically "false arrest and fabrication of evidence."[19]  (SAC, Dkt. 29, ¶ 77.)

If "there are no viable tort claims against the individual Defendants, there is no basis for City liability under a *respondeat superior* theory."  *Hatcher v. City of New York*, No. 15-CV-7500 (VSB), 2018 WL 1583036, at *10 (S.D.N.Y. Mar. 27, 2018).  Therefore, the claims for false arrest and battery are dismissed against the City as well.  *See id.* at 11 (dismissing claims against the city, because "the [defendants] had arguable probable cause to defeat [the plaintiff's] false arrest, false imprisonment, and malicious prosecution claims under both state and federal law").

Plaintiff does not appear to assert a denial of a fair trial claim under the New York Constitution.  Plaintiff only cites to Article 1, § 12 of the New York Constitution, which provides "security against unreasonable searches, seizures and interceptions."  (SAC, Dkt. 29, at 11 ("Violation of NYS Constitution against Defendant City of New York Article 1 § 12 Against Defendant City"); Pl.'s Br., Dkt. 42, at 12 n.1 ("Plaintiff's claims . . . for violation of her rights under New York State Constitution Article I, § 12 should also be permitted to proceed against defendant City of New York") (citing cases addressing false arrest claims under New York Constitution and state law).)  *See* N.Y. Const. art. I, § 12.  In any event, "[t]o the extent that

---

[19] To the extent that Plaintiff asserts her New York constitutional claims against the Individual Defendants, they are dismissed because "[t]here is no individual liability under the New York State Constitution when § 1983 provides a remedy."  *Hollins v. City of New York*, No. 10-CV-1650 (LGS), 2014 WL 836950, at *14 (S.D.N.Y. Mar. 3, 2014).

[Plaintiff] also wish[es] to hold the City liable for the denial of a fair trial claim, it does not seem that New York's Constitution recognizes this claim [based on the alleged fabrication of evidence]." *Azurdia v. City of New York*, No. 18-CV-04189 (ARR) (PK), 2019 WL 1406647, at *15 n.13 (E.D.N.Y. Mar. 28, 2019) (citing *Baez v. Jetblue Airways Corp.*, No. 09-CV-596 (CPS) (SMG), 2009 WL 2447990, at *8 n.19 (E.D.N.Y. Aug. 3, 2009)).[20]  Accordingly, Defendants' motion for summary judgment as to the New York state constitutional claims against the City is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.  Only Plaintiff's fair trial claim against Defendant Loria will proceed to trial. Because there is no claim surviving against Defendants City of New York and Maresca, they are terminated as parties to this action.  The parties shall file a joint pre-trial order that complies with the Court's Individual Rules within thirty (30) days of the date of this Memorandum & Order.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2019
         Brooklyn, New York

---

[20] "A review of caselaw indicates that New York courts recognize claims pertaining to the violation of a defendant's 'right to fair trial' in a narrower set of cases than those recognized by federal courts," including "jury bias stemming from excessive pretrial publicity, denial of a defendant's access to counsel, and improper procedures used at trial."  *Baez*, 2009 WL 2447990, at *8 n.19 (citations omitted).